# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL ACTION NO. 1:15-CV-6

| | |
|---|---|
| JENNY FORERO, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ACTING ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY, ) <br> ) <br> **Defendant.** ) <br> ) | **ORDER** |

**BEFORE THE COURT** are the cross-motions for summary judgment filed by Claimant Jenny Forero (Doc. 13) and the Commissioner (Doc. 14). For the following reasons, the Court **DENIES** Claimant's motion for summary judgment, **DENIES** the Commissioner's motion for summary judgment, and **VACATES AND REMANDS** the final decision of the Commissioner.

**I.    HISTORY**

On August 9, 2011, Claimant protectively filed a Title II application for a period of disability, disability insurance benefits and a Title XVI application for supplemental social security income. She alleged an onset date of August 1, 2008. She was denied initially and upon reconsideration. On June 7, 2013, the Claimant appeared along with her attorney and a vocational expert before Administrative Law Judge Charles R. Howard ("ALJ").

On August 5, 2013, the ALJ decided in favor of the Commissioner. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since August 1, 2008. At step two, the ALJ found that Claimant had the following severe impairments: seizure disorder; bipolar disorder; and post-traumatic stress disorder ("PTSD"). At step three, the ALJ found that Claimant

1

did not meet the Listings. However, he found that she had moderate restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, and pace. Next, the ALJ assessed Claimant with the Residual Functional Capacity ("RFC") to perform light work with the following limitations: she can never be exposed to hazards; she can perform, maintain concentration for and carry out simple, routine, repetitive tasks; she can adapt to routine changes in a work setting; she is limited to work that requires no more than occasional interaction with the public, co-workers, and supervisors. The ALJ then determined that Claimant could not perform her past relevant work as a financial advisor and waitress. However, the ALJ, with the assistance of the vocational expert, found that jobs exist in significant numbers in the national economy that the Claimant could perform; specifically, the jobs of office helper, garment sorter, and house sitter. (Tr. 24-38).

On November 7, 2012, the Appeals Council denied Claimant's request for review, making the ALJ's decision the final decision of the Commissioner. The Appeals Council received additional evidence not present before the ALJ and made it part of the record. (Tr. 4).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner—so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (4th Cir. 1990); *see also*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Hancock v. Astrue*, 657 F.3d 470, 472 (4th Cir.

2

2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson*, 402 U.S. at 401). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456. Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## III. ANALYSIS

Claimant raises two objections on appeal. The first claims that the ALJ inappropriately weighed the opinions of the medical providers. The second argues that the ALJ erred in the formulation of the RFC.

Claimant argues that the ALJ inappropriately discredited and failed to adopt all of the Plaintiff's treating providers without good reason, thereby making factual findings that were not supported by substantial evidence. Claimant's analysis of this issue is flawed because Claimant failed to recognize that the ALJ could not evaluate evidence that was not submitted to him.

An ALJ must give controlling weight to the opinion of a claimant's treating physician when the opinion concerns the nature and severity of an impairment, is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). Therefore, a treating physician's opinion will not be entitled to controlling weight if it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and/or inconsistent with other

3

substantial evidence of record.[1] An ALJ must always give "good reasons" for the weight given or not given to a treating physician's opinions. § 404.1527(c)(2).

If a treating physician's opinion is not conclusive, the opinion must be evaluated and weighed considering (1) whether the physician has examined the claimant; (2) the length of the treatment relationship and frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527(c).

The ALJ found that the mental impairments were only moderate at step two. During the RFC analysis, he assigned "some weight" to Dr. Miller's opinion because

> medical [sic] acceptable clinical findings and laboratory diagnostic techniques do not support Dr. Miller's opinion relating to the claimant's poor ability to tolerate the stress and pressure associated with day-to-day work activity . . . that portion of his opinion is inconsistent with other substantial medical evidence of record and inconsistent with the claimant's benign clinical presentations, conservative treatment and objective tests and scans.

(Tr. 36).

The ALJ gave great weight to Dr. Ilona S. Csapo, Claimant's treating psychiatrist. The ALJ did not, however, have Dr. Csapo's Medical Source Opinion dated October 6, 2013 that was submitted and incorporated into the record at the Appeals Council level. In this Opinion, Dr. Csapo stated that Claimant's limitations were as follows and were expected to last or have lasted for at least twelve continuous months:

1. Severely limited[2] in her ability to remember locations and work-like procedures

---

[1] If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir.1996); *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1992) (holding that a treating physician's opinion need not be afforded controlling weight).

[2] Defined as "major limitation. There is no useful ability to function is this area." (Tr. 731).

4

2. Moderately limited[3] in her ability to understand and remember very short and simple instructions
3. Severely limited in her ability to understand and remember detailed instructions
4. Moderately limited in her ability to carry out simple instructions
5. Severely limited in her ability to carry out detailed instructions
6. Severely limited in her ability to maintain attention and concentration for extended periods
7. Severely limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances
8. Severely limited in her ability to sustain an ordinary routine without special supervision
9. Moderately limited in her ability to work in coordination with, or in proximity to, others without being distracted by them.
10. Moderately limited in her ability to make simple work-related decisions
11. Severely limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods
12. Severely limited in her ability to interact with the general public
13. Not significantly limited[4] in her ability to ask simple questions or request assistance
14. Severely limited in her ability to accept instructions and respond appropriately to criticism from supervisors
15. Moderately-severely limited[5] in her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes
16. Moderately-severely limited in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness
17. Severely limited in her ability to respond appropriately to changes in the work setting
18. Severely limited in her ability to be aware of normal hazards and to take appropriate precautions
19. Severely limited in her ability to travel in unfamiliar places or use public transportation
20. Severely limited in her ability to set realistic goals or make plans independently of others

This Opinion contradicts the RFC that the ALJ assigned to Claimant. It also corroborates the findings of Dr. Miller, an examining psychologist. On January 29, 2013, he found that she had a GAF score of 43 (serious impairment in social and occupational functioning); that her ability to understand, retain and follow instructions is limited based on her mental impairments; that her ability to sustain attention in order to perform a routine, repetitive task is likewise limited; her ability to relate to co-workers and supervisors would be good at times and bad at other times; and that her ability to tolerate the stress and pressure associated with day-to-day work activity is very poor. (Tr. 452). He also indicated that while she was "functioning intellectually in the superior range" she also "has many and strong symptoms of post[-]traumatic

---

[3] Defined as a "moderate limitation . . . but the individual is still able to function satisfactorily." (Tr. 731).
[4] Defined as "there are some mild limitations in this area, but the individual can generally function well." (Tr. 731).
[5] Defined as "a serious limitation in this area. The ability to function is severely limited but not precluded." (Tr. 731).

5

stress disorder" and exhibits "strong depressive symptoms and has been diagnosed with bipolar disorder." (*Id.*).

This is a case where new evidence has been specifically incorporated into the record by the Appeals Council. Accordingly, this new evidence is part of the record on appeal. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011). The Court notes that the Appeals Council did not explain the basis for its decision; however, it is not required to do so. *Id.* at 702. Certainly "an express analysis of the Appeal's Council's determination would [be] helpful for purposes of judicial review." *Id.* at 706 (quoting *Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2007)). However, judicial review is still possible "as long as the record provides 'an adequate explanation of [the Commissioner's] decision.'" *Id.* (quoting *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983)). For new evidence to require remand, it must be material. *Id.* at 705. Evidence that is material if "there is a 'reasonable possibility that the new evidence would have changed the outcome.'" *Id.* When a court "cannot determine, from review of the record as a whole, if substantial evidence supports the denial of benefits" it must reverse and remand. *Id.* at 702.

In *Meyer*, the ALJ denied the disability claim and stated that the claimant had failed to provide an opinion from his treating physician. *Id.* at 703. The claimant then submitted a letter from his treating physician to the Appeals Council. *Id.* at 703-04. However, the Appeals Council did not change the ALJ's decision. *Id.* The Fourth Circuit held that remand was appropriate because the ALJ's decision suggested that an "evidentiary gap played a role in its decision." *Id*. The Fourth Circuit stated that the record was not "one-sided" and that evidence submitted needed to be reconciled by the ALJ because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder." *Id.*

Here, the Court finds that this new evidence needs to be considered on remand. The ALJ's assignment of "great" weight to Dr. Csapo now needs to be resolved with Csapo's new Opinion. Further, Csapo's new Opinion also undermines the ALJ's finding that Dr. Miller's opinion was inconsistent with other medical evidence. The Court also notes that new records from Kimberley Skelton, a licensed professional counselor, were made available to the Appeals Council. In the ALJ's opinion, he assigned her "great weight." (Tr. 37). Specifically, Skelton noted that she had utilized new assessment tools regarding Claimant's mental impairments that "were not diagnostic solely in and of themselves" but "provide a great deal of clinical information about the patient's current level of functioning." (Tr. 718). These tests indicated that she had significant symptom severity. (*Id.*). Skelton noted that Claimant's symptoms vary wildly. (Tr. 719), which is supported by her records. *Compare* (Tr. 599, "feels better for the first time in three years" record dated 2/20/13) *with* (Tr. 588, appeared depressed, anxious, agitated, and depressed). She also indicated that "[s]he has great difficulty focusing, arriving on time for appointments and her appearance is often disheveled." (*Id.*). Skelton also completed a Medical Source Opinion, which had the same types of questions as Csapo's. (Tr. 720-22). While not as dramatic as Csapo's, the Opinion has a significant number of findings indicating that Claimant is moderate to severely limited. (*Id.*). These findings undermine the ALJ's finding that medication compliance has been a significant issue. (Tr. 36). In particular, Skelton's finding that her symptoms vary undermines the ALJ's finding of improvement (*id.*) and corroborates the Claimant's testimony that her symptoms vary in degree, *see* (Tr. 76, speaking of "ups" and "depressions"); *see also* (Tr. 83, referring to "[s]omebody who could probably get a job, keep a job for a while . . . and then not be able to continue . . . because of those issues."). As a final matter, this evidence needs to be considered because the ALJ largely relies upon

7

Csapo and Skelton's records to determine the medication regimen instituted by Csapo and the EMDR therapy given by Skelton caused a great reduction in the severity of Claimant's symptoms.

This additional evidence also complicates this Court's consideration of the ALJ's failure to do a function-by-function analysis. While the ALJ aptly summarized the medical evidence before him, he failed to perform this requirement and there is (and was at the time of the hearing) conflicting evidence regarding Claimant's capacity to work consistently. *See Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

**IT IS, THEREFORE, ORDERED THAT**

(1) The Claimant's Motion for Summary Judgment is **DENIED**;

(2) The Commissioner's Motion for Summary Judgment is **DENIED**; and

(3) The case is remanded under sentence four of § 205(g) of the Social Security Act for proceedings consistent with this Opinion.

Signed: December 16, 2015

Richard L. Voorhees
United States District Judge